IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CORTNEY DANIELS, | ) | CASE NO. 1:11CV00806 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Cortney Daniels ("Daniels") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits. Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the decision of the Commissioner be REVERSED and that this case be REMANDED for further proceedings consistent with this Report and Recommendation.

## I. Procedural History

Daniels filed her application for Disability Insurance Benefits on September 19, 2006.[1] Tr. 11, 82-83. The application alleged a disability onset date of March 1, 2006. Tr. 11, 104.

---

[1] The transcript contains inconsistent application filing dates. "Disability Determinations and Transmittals" reflect a September 19, 2006, filing date (Tr. 82-83), whereas, the "Application for Disability Insurance Benefits" is dated October 12, 2006. Tr. 104-109. Additionally, Plaintiff's Amended Brief on the Merits indicates that the application was filed on October 12, 2007. Doc. 19, p. 1. The ALJ determined that the application filing date was September 19, 2006. Tr. 11. Inasmuch as the actual filing date is not at issue, the filing date as determined by the ALJ, i.e., September 19, 2006, is accepted as the filing date.

1

Daniels alleged disability based on back problems, anxiety, depression, fibromyalgia, spina bifida, migraine headaches, and gastric paresis.[2]  Tr. 13-14, 53-54, 82-84, 90.  After initial denial by the state agency (Tr. 84-86, 90-92), Daniels requested a hearing (Tr. 97), and an administrative hearing was held before Administrative Law Judge Edmund Round ("ALJ") on September 4, 2009.  Tr. 47-81.

In his October 29, 2009, decision the ALJ determined that Daniels had not been under a disability since March 1, 2006, through the date of the ALJ's decision.  Tr. 23.  Daniels requested review of the ALJ's decision by the Appeals Council on November 13, 2009.  Tr. 5-7.  On February 23, 2011, the Appeals Council denied Daniels' request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.

## II. Evidence

### A. Personal and Vocational Evidence

Daniels was born on May 13, 1977. Tr. 104.  At the time of the hearing, she was 32 years of age.  Tr. 22.  She lived with her boyfriend.  Tr. 799.  Her past work history includes work as a claims representative, customer service representative, dispatcher and receptionist/secretary.  Tr. 68-69, 144.  When Daniels was 19 years of age she was robbed and kidnapped at a mall.  Tr. 797.  She was held by her assailants for approximately 1 ½ hours and was pistol whipped.  Tr. 797.  Her assailants ultimately were incarcerated.  Tr. 797.

### B. Medical Evidence[3]

#### 1. Treating physician Christopher James, psychiatrist

---

[2] Gastric paresis is a condition affecting the stomach.  Tr. 13-14.  *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 773, 1403.

[3] Many doctors treated and/or examined Daniels or reviewed her medical records.  The medical evidence summarized herein pertains only to Drs. James, Pickholtz and Demuth because they are the only medical providers whose work is pertinent to the issues raised by the parties and discussed herein.

In September, 2007 through approximately November, 2008, Dr. James treated Daniels for anxiety and depression. Tr. 932-935. On August 4, 2009, he completed an "Anxiety Questionnaire with Medical Listing" in which he opined that Daniels had marked restrictions/limitations in the areas of daily living and maintaining social functioning. Tr. 1028. He also opined that she had repeated episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from the situation or to experience an exacerbation of signs or symptoms. Tr. 1028. As part of his opinion he indicated that there were medically documented findings of Daniels' generalized persistent anxiety with the following signs or symptoms: motor tension, autonomic hyperactivity and apprehensive expectation. Tr. 1028. He opined that she had recurrent panic attacks manifested by sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on average at least once per week; and that she had recurrent and intrusive recollections of a traumatic experience which were the source of marked distress. Tr. 1028. He concluded the August 4, 2009, Questionnaire with the following comments "Pt has experienced chronic problems with anxiety and depression which have severely impacted her ability to function in a work environment and have put stress on her interpersonal relationships." Tr. 1029

    **2.**    **Consultative physician Herschel Pickholtz, Ed.D., psychologist**

On June 26, 2007, Dr. Pickholtz completed a consultative examination of Daniels. Tr. 797. He issued his psychological report on July 15, 2007. Tr. 797-801. Based on his examination, he diagnosed Daniels with mild to moderate depression, post traumatic stress disorder with some anxiety features, mixed personality involving some addictive and dependent personality features, a multiplicity of pain and physical complaints, moderate to severe psychosocial stressors (occupational and economic problems and other psychosocial stressors

related to her physical pain and difficulties). Tr. 801. He rated her has having a GAF of 58 based on her described symptoms and mental status and as having a GAF of 50-55 based on her overall ability to take care of herself, relate to her boyfriend, socialize with others, organize her daily activities and perform chores.[4] Tr. 801. He opined that her ability to relate to co-workers and others fell within the low average range. Tr. 801. He opined that her ability to handle eight-hour work activities relating to thinking and memory were within the average range. Tr. 801. He opined that her ability to handle 8-hour work activities related to speed, consistency and reliability and her ability to handle the pressures of work from a psychological perspective were in the mild range; Dr. Pickholtz noted that her major impediment was associated with her physical limitations and pain. Tr. 801.

3. State agency reviewing physician David Demuth, M.D.

On July 11, 2007, Dr. Demuth reviewed Daniels' medical records and completed a Mental RFC Assessment and a Psychiatric Review Technique. Tr. 807-824. Dr. Demuth opined that Daniels suffered from depression (Tr. 814), post traumatic stress disorder (Tr. 816), and personality disorder not otherwise specified. Tr. 818. He opined that Daniels had sufficient concentration/persistence for simple quick work tasks. Tr. 809. However, he also opined that Daniels "would have difficulty with more detailed tasks and maintaining concentration for extended periods of time," and "may have difficulty with jobs requiring frequent changes in pace." Tr. 809. In the category of "sustained concentration and persistence," Dr. Demuth indicated that Daniels was moderately limited in her ability to carry out detailed instructions,

---

[4] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

4

maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based systems, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 808. He also indicated, in the category of "understanding and memory," that Daniels was moderately limited in her ability to understand and remember detailed instructions. Tr. 807. In Dr. Demuth's Psychiatric Review Technique, he opined that Daniels had moderate limitations in maintaining concentration, persistence or pace. Tr. 821. Also, in his Psychiatric Review Technique, Dr. Demuth opined that Daniels only had mild limitations in maintaining social functioning. Tr. 821. Further, he did not find any limitations in her ability to perform daily living activities. 809, 821.

### C. Testimonial Evidence

#### 1. Daniels' Testimony

Daniels was represented by counsel and testified at the September 4, 2009, hearing regarding her work history, medical issues, and daily living activities. Tr. 54-66, 69-70, 79-80.

#### 2. Vocational Expert's Testimony

Vocational Expert Mark A. Anderson ("VE") testified at the hearing. Tr. 66-79. The VE described Daniels' past work as a claims representative as a sedentary, semi-skilled job, and her past work as a customer service representative and as a dispatcher as sedentary, skilled jobs. Tr. 68-69. Following Daniels' testimony regarding her past work as a receptionist/secretary at the Cleveland Institute of Medical Assisting, the VE described her work as a receptionist/secretary as a sedentary, semi-skilled job. Tr. 69-70.

The ALJ asked the VE to assume a hypothetical worker who is a 32-year-old high school graduate with no currently relevant vocational training; who is limited to sedentary work, meaning that the hypothetical worker can stand or walk for 2 hours, sit for 6 hours during an 8-

hour work day, lift, carry, push or pull a maximum of 10 pounds, all with commercially normal breaks; who is precluded from using ladders, ropes or scaffolds; who can occasionally use stairs; who is precluded from stooping, kneeling, crouching and crawling; and who is limited to low stress tasks where there is no requirement for arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others.  Tr. 71-72.  The ALJ then asked the VE whether such a hypothetical worker could perform any of Daniels' past work.  Tr. 72.  The VE testified that such a worker could possibly perform the receptionist job.  Tr. 72.  Notwithstanding this response, the ALJ asked the VE whether there were any jobs in the national or regional economy that such a hypothetical work could perform.  Tr. 72-73.  The VE testified that there were jobs that such a worker could perform and the VE identified the following jobs: table worker (examining materials from a seated position) –sedentary, unskilled; inspector job (inspector of circuit board assemblies) – sedentary, unskilled; and document preparer – sedentary, unskilled.[5]  Tr. 73-74.

Daniels' attorney asked some clarifying questions relative to the hypothetical.  Tr. 75-78.  The first inquiry, although inartfully framed, related to "routine, pace and persistence" and "fingering" or "fine manipulation" restrictions.[6]  Tr. 75-76.  In response, the VE indicated that, based on that modification, the jobs recited by the VE would be eliminated.  Tr. 76.  The second inquiry related to lifting restrictions.  Tr. 76-78.  Daniels' attorney attempted to restrict the amount of weight that the hypothetical worker could lift from 10 to 8 pounds.  Tr. 77-78.  The

---

[5] The VE identified the number of jobs available in each of the stated jobs in the national, state and regional economy.  Tr. 73-74.

[6] The ALJ shorthanded, with the attorney's agreement, the additional hypothetical restriction the attorney attempted to pose as "hypothetical worker is precluded from fingering operations, bilaterally"  Tr. 75-76.

VE testified that, because the DOT[7] does not break down weights below 10 pounds into pound increments, he could not answer the question. Tr. 78.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past

---

[7] Dictionary of Occupational Titles is published by the Department of Labor. *See* 20 CFR § 404.1566(d)(1).

      relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his October 29, 2009, decision, the ALJ determined that Daniels had not been under a disability since March 1, 2006, through the date of the ALJ's decision. Tr. 23. The ALJ reviewed the record, heard testimony and found that:

1. Daniels met the insured status requirements through December 31, 2010. Tr. 13.

2. Daniels engaged in substantial gainful activity from September 1, 2008, through December 31, 2008, but had not engaged in substantial gainful employment at any other time since March 1, 2006.[8] Tr. 13.

3. Daniels had severe impairments of post laminectomy syndrome, lumbar spondylosis, and lumbar degenerative disc disease; fibromyalgia; depression; post traumatic stress disorder; a personality disorder; and prescription narcotic addiction through December 7, 2007. Tr. 13-14. The ALJ did not find Daniels' migraine headaches or gastric paresis to be medically determinable impairments. Tr. 14.

---

[8] Daniels has not challenged the ALJ's finding concerning substantial gainful activity for the stated period. The undersigned notes, however, that, if benefits ultimately are awarded, the period of substantial gainful activity may impact the amount of the award.

8

4. Daniels did not have an impairment or combination of impairments that met or medically equaled one of the Listings.[9] Tr. 14. In particular, the ALJ considered Listing 1.04, 12.04, 12.06 and 12.08. Tr. 14. When considering whether Daniels' impairments met or equaled a Listing, the ALJ found that Daniels had "moderate difficulties in her ability to maintain concentration, persistence or pace." Tr. 14.

5. Daniels had the residual functional capacity ("RFC") to do a range of sedentary work, specifically she could lift, carry, push, and/or pull a maximum of 10 pounds, sit for 6 hours and stand and/or walk for 2 hours in an 8-hour day, with normal breaks. However, she could never use ladders, ropes or scaffolds and could never stoop, kneel, couch or crawl. She could occasionally use stairs or ramps. She was limited to low-stress tasks and was precluded from tasks involving arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others. Tr. 15-21.

6. Daniels was unable to perform any past relevant work which included work as a claims representative, customer service representative or dispatcher. Tr. 21.

7. Daniels was born on May 13, 1977; she was 28 years old on the day her alleged disability began; 32 years old as of the date of the decision; a "younger" individual at all relevant times. Tr. 22.

8. Daniels has at least a high school education and is able to communicate in English. Tr. 22.

9. Transferability of job skills was not material to a determination of disability. Tr. 22.

10. Considering Daniels' age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Daniels could perform including table worker, inspector, e.g., circuit boards, and document preparer. Tr. 22-23.

Based on the foregoing, the ALJ determined that Daniels had not been under a disability from March 1, 2006, through October 29, 2009, the date of the ALJ's decision. Tr. 23.

---

[9] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

## V. Parties' Arguments

**A.     Plaintiff's Arguments**

Daniels presents two arguments for the Court's review.  Doc. 19, p. 13-30; Doc. 22, p. 1-4.  First, she argues that the ALJ violated the treating physician rule.  Doc. 19, p. 13, 14-26; Doc. 22, p. 1-2.  More particularly, Daniels argues that the ALJ's reasons for not giving controlling weight to her treating psychiatrist, Dr. James, were not good reasons.  Doc. 19, p. 15-16.  Second, she argues that the ALJ's controlling hypothetical and RFC did not adequately accommodate the limitations the ALJ found to exist.  Doc. 19, p. 13, 16-20; Doc. 19, p. 2-4.  Daniels relies on the Sixth Circuit's decision in *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), to support her argument that the ALJ improperly omitted restrictions reflective of the ALJ's findings of moderate limitations in the area of concentration, persistence or pace.  Doc. 19, p. 17-20.

**B.     Defendant's Arguments**

In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence.  Doc. 20, p. 7-8.  The Commissioner argues that the ALJ reasonably rejected the medical opinions of Dr. James, Plaintiff's treating psychiatrist.  Doc. 20, p. 8-11.  The Commissioner also argues that the "ALJ's residual functional capacity accommodates all of Plaintiff's limitations, and that the *Ealy* case is distinguishable.  Doc. 20, p. 11-14.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321

F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

A.  **The ALJ's reasons for not providing controlling weight to treating physician Dr. James' opinion were not "good reasons."**

Daniels argues that the ALJ violated the treating physician rule by not providing good reasons for his decision not to provide controlling weight to Dr. James' opinion. Doc. 19, p. 14-16; Doc. 22, p. 1-2. In response, the Defendant argues that the ALJ's findings as to Dr. James were reasonable and supported by substantial evidence. Doc. 20, p. 8-11.

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner's regulations impose a clear duty always to give good reasons in its notices of determinations or decisions for the weight given to treating source opinions. *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d)(2)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted). "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Id.* Further, "the requirement safeguards a

reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the treating physician rule.'" *Id.* at 938 (citing *Wilson*, 378 F.3d at 544).

Where a treating source's opinion is not provided controlling weight, certain factors must be applied by the ALJ to determine what weight should be given to the treating source's opinion. *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion. *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d).

An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-940 (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations omitted)). Inasmuch as 20 C.F.R. § 404.1527(d)(2) creates important procedural protections for claimants, failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits. *Wilson*, 378 F.3d at 546-547.

Here, the ALJ's decision not to provide controlling weight to Dr. James' opinion was based on the following reasons: (1) there were no treatment notes from Dr. James in evidence; (2) Dr. James did not provide a basis for his opinion; and (3) Dr. James' opinion is inconsistent with the evidence as a whole. Tr. 18.

As to the ALJ's first reason, i.e., that there were no treatment notes from Dr. James in evidence, the Defendant concedes that, contrary to the ALJ's finding, there are treatment notes

12

from Dr. James. Doc. 20, p. 8 (citing Tr. 932-935).[10] Accordingly, the ALJ's decision not to provide controlling weight to Dr. James' opinion because there were no treatment notes authored by him is not a "good reason."

As to the ALJ's second reason, i.e., that Dr. James did not provide a basis for his opinion, the ALJ did not provide a sufficiently specific explanation as to how he reached his conclusion that Dr. James did not provide a basis for his opinion. The lack of a sufficiently specific explanation for the ALJ's conclusion that Dr. James did not provide a basis for his opinion does not allow this Court to conduct a meaningful or sufficient review of the ALJ's application of the treating physician rule. *Cole*, 661 F.3d at 938. Without a sufficiently clear explanation by the ALJ as to how he arrived at his decision that Dr. James did not provide a basis for his opinion, it is unclear why or how the "Anxiety Questionnaire with Medical Listing" completed by Dr. James on August 4, 2009,[11] and/or the treatment notes[12] do not constitute a basis for his opinion. Tr. 932-935, 1028-1029. Accordingly, ALJ's second reason for not providing controlling weight to a treating physician's opinion is not a "good reason."

As to the ALJ's third reason, i.e., that Dr. James' opinion is inconsistent with the evidence as a whole, the ALJ also did not provide a sufficiently specific explanation to make

---

[10] While, as Defendant asserts, there are some indecipherable signatures (Doc. 20, p. 8), a review of the treatment notes from September 2007 shows a signature for Dr. James. Tr. 934.

[11] A review of the "Anxiety Questionnaire with Medical Listing" does not clearly support the ALJ's conclusion that Dr. James did not offer a basis for his findings regarding Daniels' limitations. Tr. 1028-1029. For example, as part of his opinion he indicated that there were medically documented findings that Daniels exhibited generalized persistent anxiety with the following signs or symptoms: motor tension, autonomic hyperactivity and apprehensive expectation. Tr. 1028. He also opined that she had recurrent panic attacks manifested by sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on average at least once per week; and that she had recurrent and intrusive recollections of a traumatic experience which were the source of marked distress. Tr. 1028. Finally, he states "Pt has experienced chronic problems with anxiety and depression which have severely impacted her ability to function in a work environment and have put stress on her interpersonal relationships." Tr. 1029.

[12] As noted *supra*, the ALJ did not consider Dr. James' treatment notes because he erroneously believed that there were none in evidence. Tr. 18.

13

clear to any subsequent reviewers the reasons for the weight provided to Dr. James' opinion. *Cole*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *11. Without more specifics as to why the ALJ determined that Dr. James' opinion was inconsistent with the evidence as a whole, the Court would be required to speculate or engage in *post hoc rationalization* as to why the ALJ reached the decision he did relative to Dr. James. Accordingly, ALJ's third reason for not providing controlling weight to a treating physician's opinion is not a "good reason."

Because the three reasons offered by the ALJ for not providing controlling weight to Dr. James' opinion do not meet the requirements of the treating physician rule, even if the ALJ's conclusions could be justified based on the record, there is a lack of substantial evidence to support the ALJ's decision. *Cole*, 661 F.3d at 939-940; *see also Wilson*, 378 F.3d at 546-547 (a failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits.) Accordingly, this case should be remanded for proper application of the treating physician rule.

**B.      The ALJ's Step Five determination is not supported by substantial evidence.**

Daniels argues that the ALJ's finding under Step Five that she has the RFC to perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence because the ALJ's hypothetical to the VE and the ALJ's RFC did not accurately reflect Daniels' moderate limitations in maintaining concentration, persistence or pace. Doc. 19, p. 16-20.

In support of her argument, Daniels points to the fact that, at Step Three, the ALJ himself found that Daniels had moderate difficulties in her ability to maintain concentration, persistence and pace. Tr. 14. This determination by the ALJ was not later rejected by the ALJ when he

discussed and established Daniels' RFC.  Tr. 14-20.  When discussing the medical opinions, the ALJ gave some weight to state agency reviewing psychologist Dr. Demuth's opinions.  Tr. 19.  While Dr. Demuth found that Daniels had sufficient concentration/persistence for simple quick work tasks (Tr. 19, 809), he also opined in his Mental RFC  that Daniels was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal workday and workweek without interruptions from psychologically based systems and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr.  808-809.  Further, in his Psychiatric Review Technique, Dr. Demuth opined that Daniels had moderate limitations in maintaining concentration, persistence or pace.  Tr. 821.  He opined that Daniels only had mild limitations in maintaining social functioning.  Tr. 821.  The ALJ specifically indicated his disagreement with Dr. Demuth's opinion regarding Daniels' social functioning abilities (because it was the ALJ's opinion that recent evidence suggested greater limitations in social functioning).  Tr. 19.  However, he gave the report "some weight," and he did not reject other portions of Dr. Demuth's opinions including those indicating that Daniels was moderately limited in her ability to maintain concentration, persistence or pace.  Tr. 14, 19.

  To satisfy his burden at Step Five, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question."  *Id.* (citation omitted).  However, if an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations.  *Id.; Ealy*, 594 F.3d at 516-17; *see also Webb v.*

15

*Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do").

The Sixth Circuit's decision in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) is applicable here.  An omission of speed and pace-based restrictions from a hypothetical question is reversible error and restrictions to "simple" or "low stress" work do not sufficiently incorporate a claimant's moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516–17.  In *Ealy*, the ALJ found that the claimant had moderate difficulties in concentration, persistence and pace but the ALJ did not ask the vocational expert a hypothetical containing a fair summary of those restrictions. *Id*. at 516.  Instead, the ALJ's hypothetical only limited the claimant to simple, repetitive tasks and instructions. *Id.*  The Sixth Circuit concluded that the hypothetical did not adequately describe the claimant's limitations and, as a result, the vocational expert's testimony did not constitute substantial evidence in support of the ALJ's Step Five determination. *Id.*

In this case, the ALJ found that Daniels had moderate limitations in concentration, persistence and pace (Tr.14, 19), but did not include restrictions reflecting those limitations in his hypothetical.  The ALJ's restriction to "low-stress" tasks is not an adequate substitute for those limitations because it does not account for speed or pace-based restrictions.  For example, the fact that a job is low-stress does is not necessarily related to whether, or to what degree, a worker's moderate concentrational deficiencies will affect the timely completion of that job.  Thus, the hypothetical does not adequately describe Daniels' mental limitations and the VE's testimony that Daniels could work as a table worker, inspector, e.g., circuit boards, or document

16

preparer (Tr. 22, 73-74) does not serve as substantial evidence in support of the ALJ's determination that Daniels could perform such work.

In response, the Commissioner first argues that the Plaintiff's argument should be rejected because even though the ALJ found that Plaintiff had moderate difficulties in her ability to maintain concentration, persistence or pace he further determined that she still had sufficient ability to concentrate to drive and read books. Doc. 20, p. 11-12; Tr. 14. Based on this, the Commissioner asserts that the ALJ could reasonably conclude that such activities, i.e., reading and driving, required a sufficient amount of concentration, persistence or pace that would allow Plaintiff to perform a low-stress job that did not involve arbitration, negotiation, confrontation or being responsible for the direction or safety of others. Doc. 20, p. 12. The ALJ does not indicate in his decision that he chose to not account for Daniels' moderate limitations in concentration, persistence or pace in the RFC or VE hypothetical because Daniels has sufficient ability to drive and read books. Because inclusion of limitations as to concentration, persistence or pace may have produced a different result, i.e., with inclusion of limitations as to concentration, persistence or pace, the VE may have testified that there were no jobs available in the national economy, the undersigned is not willing to accept the Defendant's *post hoc rationalization* as an explanation as to why the ALJ excluded limitations as to concentration, persistence or pace from Daniels' RFC and/or the VE hypothetical even though the ALJ himself found moderation limitations in those abilities. *See Berryhill v. Shalala*, 4 F.3d 993, *6-8 (6th Cir. 1993) (unpublished) (setting forth the requirement that an agency decision is to be reviewed based on the reasons set forth by the agency yet acknowledging that *post hoc rationalization* may in certain instances be harmless error); *cf. Poe v. Commissioner of Soc. Sec.*, 342 Fed. Appx.

149, 159 (6th Cir. 2009) (where an ALJ's decision is clearly supported by substantial evidence, the court need not address alleged errors pertaining to *post hoc rationalization*).

Second, the Commissioner argues that Plaintiff's argument should be rejected because consultative examining physician Dr. Pickholtz's findings support the ALJ's findings that Plaintiff was not so limited that she could not perform a low-stress job that did not involve arbitration, negotiation, confrontation or being responsible for the direction or safety of others. Doc. 20, p. 12. In his analysis of Dr. Pickholtz's opinion, the ALJ refers to the fact that Dr. Pickholtz's GAF ratings for both symptom severity[13] and functional severity[14] were in the moderate ranges. Tr. 19. The ALJ also refers to Dr. Pickholtz's opinion that Daniels had moderate impairment in her abilities to care for herself, relate to others, organize her daily activities and perform her chores. Tr. 19. The ALJ then indicates that Dr. Pickholtz's opinion is given full weight because it is consistent with the evidence. Tr. 19. Defendant relies on the portion of Dr. Pickholtz's opinion that states Daniels' "overall abilities to handle eight-hour work activities relative to speed, consistency and reliability and to handle the stresses and pressures of work, from psychological perspective as a result of her depression and anxiety, seem to fall within the mild range of impairment . . ." Doc. 20, p. 12; Tr. 801. However, the ALJ does not address the inconsistency between his own determination at Step Three of moderate impairments in consistency, persistence or pace (Tr. 14) with Dr. Pickholtz's opinion on those limitations, i.e., "[h]er overall abilities . . . relative to speed, consistency and reliability . . . seem to fall within the mild range of impairment . . ." Tr. 801. Based on the ALJ's lack of analysis regarding Dr. Pickholtz's opinion relative to this specific limitation and because the ALJ himself found moderate limitations in concentration, persistence or pace, Defendant's reliance on Dr.

---

[13] Dr.Pickholtz rated Daniels' symptom severity to be 58. Tr. 801.

[14] Dr.Pickholtz rated Daniels' functional severity to be 50-55. Tr. 801.

Pickholtz's opinion that Daniels had only mild limitations in "speed, consistency and reliability" is unpersuasive.

Third, the Commissioner argues that *Ealy* is distinguishable because the only physician offering an opinion that Daniels had limitations with pace was state agency psychologist Dr. Demuth. Doc. 20, p. 12-13. Although other physicians may have found fewer limitations on Daniels' ability to maintain concentration, persistence or pace,[15] in light of the fact that the ALJ himself determined that there were moderate limitations in concentration, persistence or pace, the undersigned finds *Ealy* to be applicable. As indicated *supra*, a restriction of "low stress" work does not sufficiently incorporate a claimant's moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516–17. Accordingly, under *Ealy*, Defendant's arguments are unavailing because the restrictions that were included did not sufficiently describe Daniels' moderate limitations in concentration, persistence and pace as determined by the ALJ and as supported by Dr. Demuth's report which was given some weight. *Id.*; *see also Renn v. Comm'r of Soc. Sec.,* No. 1:09–CV–319, 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010) (holding that, pursuant to *Ealy,* an RFC limiting the plaintiff to simple, routine repetitive tasks, occasional interaction with public, and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and concentration); *Whack v. Astrue*, No. 06-4917, 2008 WL 509210 at *8 (E.D. Pa. Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace).

---

[15] Defendant asserts that Dr. Pickholtz found only mild limitations in speed, consistency and reliability (Doc. 20, p. 13 (citing Tr. 801)), and that Dr. James, Plaintiff's own treating physician "did not think that she had severe difficulties in concentration, persistence or pace." Doc. 20, p. 13 (citing Tr. 1028). Defendant's attempt to rely on a treating physician's opinion that Defendant asserts the ALJ properly rejected is unpersuasive.

In sum, the ALJ's hypothetical did not adequately describe Daniels' mental limitations. Accordingly, the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five and remand is required.

## V. Conclusion and Recommendation

For the foregoing reasons, the decision of the Commissioner should be REVERSED and this case REMANDED for further proceedings consistent with this Report and Recommendation.[16]

Dated: May 7, 2012

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[16] The recommendation to remand is not a determination that Daniels is disabled.